## Liberty Warehouse Company v. Burley Tobacco Growers' Co-operative Association.

(Decided May 1, 1925.)

### Appeal from Mason Circuit Court.

1. Common Law—Legislature May Repeal Common Law in Jurisdiction.—Legislature, may repeal common law prevailing in jurisdiction where it sits, as well as any prior statutory enactment.
2. Constitutional Law—Statutes—Act Providing that Co-operative Marketing Companies are Not Illegal Monopolies Not Unwarranted Classification.—Bingham Co-operative Marketing Act, section 28, providing that co-operative marketing companies shall not be considered illegal monopolies held not unconstitutional as an unwarranted classification.
3. Constitutional Law—Police Power May be Changed or Enlarged to Fit Changed Conditions.—Police power is not unalterable and fixed, but may be changed, enlarged, modified, or qualified to fit the changed conditions which it is intended to improve.
4. Evidence—Court Will Take Judicial Knowledge of History of Country and Current Events.—Court will take judicial knowledge of history of country and current events, and therefore knows that at time Bingham Co-operative Marketing Act, providing for co-operative marketing companies, was enacted, agricultural producer was at mercy of speculators, who fixed the prices with a resulting oppression which was driving producer from his farm.
5. Statutes—Act Providing for Organization of Co-operative Market-

ing Companies Not Special Legislation.—Bingham Co-operative Marketing Act, providing for organization of co-operative marketing associations is not special legislation and discriminatory within Constitution, section 59, as legislature may classify subjects within proper limits and enact statutes applicable to all cases coming within classification.

6. Statutes—Penalty on Warehouseman for Inducing Violation of Marketing Agreement Not Additional Cause of Action for Violation of Agreement.—Bingham Co-operative Marketing Act, section 27, imposing penalty on warehousemen for inducing violation of co-operative marketing association agreement and providing for recovery of attorney's fees, does not give additional cause of action for violation of the pooler's contract in violation of Constitution, section 59, subsec. 29, relative to special laws.

7. Constitutional Law—Legislature May Fix Reasonable Penalty for Violation of Act.—Bingham Co-operative Marketing Act, section 27, imposing penalty on warehousemen inducing breach of co-operative marketing agreement does not violate Constitution, U. S. Amend. 14, by taking from jury right to determine amount of penalty to be recovered as legislature may fix penalty, provided it is not unreasonable.

8. Constitutional Law—Statutes—Statute Providing for Recovery of Attorney's Fees Only where Plaintiff Recovers Penalty, Not Denial of Equal Protection or Discriminatory.—Bingham Co-operative Marketing Act, section 27, which imposes penalty on warehouseman, inducing breach of co-operative marketing association agreement, and provides for recovery by plaintiff of attorney's fees, where penalty is recovered, but not by defendant when he wins, does not deny equal protection of laws or discriminate in favor of plaintiff, in violation of Constitution U. S. Amend. 14, or Constitution Kentucky, section 59, subsec. 29, relative to special laws, since defendant is not liable for penalty or attorney's fees unless he violates act.

9. Agriculture—Statute Imposing Fixed Penalty, Not Unconstitutional as Limiting Recovery for Injury to Property.—Bingham Co-operative Marketing Act, section 27, imposing fixed penalty on warehouseman for inducing breach of tobacco growers' co-operative association agreement, to be recoverable by association, does not violate Constitution, section 54, as limiting the amount recoverable for injury to property.

10. Constitutional Law—Defendant May Not Object to Constitutionality of an Act which Affects Only Rights of Plaintiff.—Defendant may not object to the constitutionality of Bingham Co-operative Marketing Act, section 27, as limiting amount of plaintiff's recovery which affects only the rights of the plaintiff.

11. Commerce—Act Providing for Tobacco Growers' Marketing Co-operative Associations, Not Encroachment on Jurisdiction of Federal Government Over Interstate Commerce.—Bingham Co-operative Marketing Act, providing for tobacco growers' co-operative marketing association, held not encroachment on jurisdic-

tion of federal government over interstate commerce, since Clayton Amendment to Sherman Anti-Trust law relinquishes superior rights to regulate interstate commerce with reference to agricultural products.

ALLEN D. COLE and J. M. COLLINS for appellant.

ROBERT H. HAYS, BROWNING & REED and AARON SAPIRO for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Burley Tobacco Growers' Co-operative Association, was organized pursuant to the provisions and terms of a statute enacted January 10, 1922, commonly known as the Bingham Co-operative Marketing Act. The statute is now sections 883f-1-41, both inclusive, in the 1924 Supplement to Carroll's Kentucky Statutes. Plaintiff brought this action in the Mason circuit court against appellant and defendant, Liberty Warehouse Company, to recover the penalty of $500.00 prescribed by section 27 of the act and now section 883f-27 of the supplement to the statutes. In the petition it was charged as a ground for the recovery that defendant was a corporation and conducting a tobacco warehouse in this Commonwealth and that it had violated the provisions of the section by knowingly aiding, assisting and inducing a member of the association to violate his contract after it had been notified of the facts and before it sold the tobacco of the member on its loose leaf floor. The petition also prayed for the recovery of a reasonable attorney's fee against defendant and which is also provided for in the same section. We will not consume time in giving a detailed statement of the averments of the petition, but will content ourselves with saying that it contained all the necessary averments to authorize the recovery prayed for if the act, and particularly its section 27, does not contravene any provision of either the federal or our Constitution. The demurrer filed to the petition was overruled, followed by an answer in several paragraphs wherein the entire act was attacked as violative of the 14th amendment of the federal Constitution, since it is claimed that it contravenes practically all the guarantees contained in that amendment. It was also alleged that the statute as an entirety was invalid because it attempted to regulate and affect interstate commerce, which was exclusively within the juris-

diction of the federal government and its regulation forbidden by the legislature of a state.

Focusing the defense on the particular section creating the cause of action in favor of plaintiff (27 of the act), defendant alleged (a), that it was invalid because it prescribed a penal action in favor of plaintiff without the creation of a public offense and it was, therefore, special legislation in violation of subsections 4 and 29 of our Constitution; (b), that it violated subsections 1 and 29 of the same section of our Constitution in that it prescribed a special cause of action unknown to the common law in favor of the plaintiff only, and it is, therefore, special legislation in violation of those subsections, and also that it violates the same subsections by trenching upon the judicial authority in regulating trials before the jury by a special act; (c), that it violates the 14th Amendment to the federal Constitution by giving the action therein claimed to only co-operative associations to which plaintiff belongs for the violations contained in the section; (d), that it conflicts with section 54 of the Constitution by limiting and fixing the amount to be recovered by plaintiff for an injury to its property, i. e., its contract with its members; (e), that it violates the 14th Amendment to the federal Constitution because it takes from the jury the right to determine the amount of penalty that should be recovered for the damages to plaintiff's property based upon the facts contained in the section; (f), that it violates section 29 of section 59 of our Constitution by giving in connection with section 18 of the Bingham Act a double remedy for plaintiff's breach of contract with its member; (h), that it violates the same subsection of the same section of our Constitution as well as the 14th Amendment of the federal Constitution by denying to appellant the equal protection of the laws, since there is no provision for defendant to recover an attorney's fee against plaintiff if the latter's action to recover the penalty should be dismissed, and it is, therefore, discriminatory in favor of plaintiff. In a separate paragraph defendant alleged that plaintiff had interfered with and injured its business not only by organizing and thereby taking from defendant tobacco that it would otherwise have obtained, but also by the bringing of this action, and all in an endeavor to assert its rights contrary to the federal statute against pools, monopolies and combinations commonly known as the Sherman Anti-Trust Act, and defendant had been in-

jured and damaged thereby in the sum of $20,000.00, and it sought recovery of treble damages ($60,000.00) allowed by that act. Demurrers and motions testing the sufficiency of the answer as a whole, including the counterclaim, were filed and made by plaintiff and sustained, and defendant declining to plead further judgment was rendered against it for the penal sum of $500.00, as provided in section 27 of the Bingham Act, and for $100.00 attorney's fee, and from that judgment it prosecutes this appeal. The constitutional ailments of the statute and relied on by the defense are so numerous that we may have overlooked some of them, but we will attempt, in a brief way, by what we shall say in this opinion, to point out that none of them is available as a defense to this action.

Practically all, if not all, of the objections here urged were disposed of by us, contrary to defendant's contention, in the very recent case of Potter v. Dark Tobacco Growers' Co-operative Association, 201 Ky. 441, wherein, with considerable detail and much elaboration, we held that the enactment by our legislature of the Bingham Co-operative Marketing Act did not violate the 14th Amendment to the federal Constitution nor any of the provisions of section 59 of our Constitution as being special or discriminatory legislation, since the subject matter dealt with by the act was permissible classification within the provisions and terms of both the federal and state constitutional provisions. But, it was said in that opinion: "There is, however, neither allegation nor proof that a monopoly actually has been created, or that trade has been restrained by appellee, hence it is clear the contract cannot be annuled as violative of the antitrust provisions of either the Sherman Act or the common law now in force in this state;" and about the only reference by counsel to the Potter opinion is to the insertion of that excerpt in it which it is claimed removes it as an authority in this case, since it is insisted that in this action those matters are *expressly* averred and admitted by the demurrer. But we do not interpret the Potter opinion as being wholly based upon the absence of such facts. The above excerpt was inserted therein only as a strengthening reason for the conclusions finally reached by the court, and it was never intended, nor is the opinion susceptible to any such interpretation, that it would have been otherwise if these matters had been expressly averred. Both in that case and in this one the validity

of the act as well as all of its sections was and is to be tested by the power and authority conferred upon plaintiff by the terms of the act itself, since it was not claimed in that case, nor in this one, that plaintiff was doing or intended to do anything beyond the power conferred upon it by the statute. In other words, neither in the Potter case nor in this one was the constitutionaity of the act or any of its sections contested because of an unconstitutional administration of its provisions, but only because the provisions themselves were unconstitutional. It is, therefore, patent that the Potter opinion, if we are to adhere to it, is not in the least destroyed as an authority herein because of the reason urged by defendant.

We will not repeat the discussion of the constitutional objections to the Bingham Act that were relied on in the Potter opinion, nor restate our reasoning therein contained through and by which we upheld it, and will decline to sustain any of the objections therein urged against its constitutionality, since on reconsideration we entertain the same opinion as to its validity.

We may add to what was said in that opinion that there is no *statute* at present in this state, nor was there any when the cause of action herein arose, against pools, trusts and monopolies, and by the Clayton Amendment to the Sherman Anti-Trust Act agricultural products were expressly excluded from that act; which left as the only law against such combinations, the common law, provided it prevailed in this state as to agricultural products after the enactment of the Bingham Act. It is, however, conceded that it is competent for a legislature to repeal the common law prevailing in the jurisdiction where it sits, the same as it may repeal a prior statutory enactment, and section 28 of the Bingham Act expressly provides that the organization of the co-operative marketing companies provided for by it shall not be deemed "to be a conspiracy nor a combination in restraint of trade nor illegal monopoly; nor an attempt to lessen competition or to fix prices arbitrarily or to create a combination or pool in violation of any law of this state." It is then provided in the same section that "the marketing contracts and agreements between the association and its members and any agreement authorized in this act shall be considered not to be illegal or in restraint of trade," etc. It would, therefore, seem that section 28 of the act expressly repealed any rule of the common law that might prevail in this state militating against the legality

of such contracts. However, if it should be contended that such a provision was itself unconstitutional it could only be so held upon the ground that it was an unwarranted classification, which the Potter opinion, and many others we might cite, held was untrue.

But back of all that, we think it would not be amiss to say that neither the police power of a legislature nor the common law, is unalterable and forever fixed, regardless of changes in prevailing conditions. Each of them was intended to improve human conditions and to provide a method for the betterment of society under present prevailing and developed conditions. As they change, it is competent to change the common law or to enlarge, modify or qualify the police power to fit the changed conditions. We take judicial knowledge of the history of the country and of current events, and from that source we know that conditions at the time of the enactment of the Bingham Act were such that the agricultural producer was at the mercy of speculators and others who fixed the price of the selling producer and the purchasing price of the final consumer through combinations and other arrangements, whether valid or invalid, and that by reason thereof the former obtained a grossly inadequate price for his products. So much so was that the case that the intermediate handler between the producer and the final consumer injuriously operated upon both classes and fattened and flourished at their expense. It was and is also a well known fact that without the agricultural producer society could not exist, and the oppression brought about in the manner indicated was driving him from his farm, thereby creating a condition fully justifying an exception in his case from any provision of the common law, and likewise justifying legislative action in the exercise of its police power.

Supplementing everything heretofore said it may be also stated that co-operative marketing statutes for agricultural products have been enacted in a great number of the agricultural states, the provisions of which are similar to and in many instances the same as are the provisions of the Bingham Act. They are all intended to accomplish the same ultimate end, and in each of those states they have been upheld in actions urging the same constitutional objections as are made here. To insert those cases would more than fill a page of this opinion and we will refrain from doing so, since they may be found in any well equipped law library. They all pro-

ceed upon the ideas herein expressed and those contained in the Potter opinion.

What has been said disposes of all the objections to the act as a whole, as well as its section 27, that are based upon the ground of improper classification and thereby making its provisions special legislation and discriminatory in favor of plaintiff, contrary to the inhibitions of secton 59 of our Constitution and its various subsections, since under that section it is competent for the legislature to classify subjects within proper limits and after its enactment a statute applicable to the classified subject applies to all cases coming within that classification. It is not special but general legislation and, therefore, is not offensive to the section. We have so held in a great number of cases since the adoption of our present Constitution, and the principle is familiar to and conceded by the legal profession throughout the state.

What we have already said disposes of practically all of the objections from (a) to (h) enumerated above, with the exception of some to which we will now direct our attention. The first one is, that it truthfully may be said that the imposition of the $500.00 penalty in section 27 of the Bingham Act does not give to plaintiff an additional cause of action for the violation of the pooler's contract. The *member* who violates his contract is not penalized to any extent by any of the terms of that section. They only apply to the denounced conduct of a *warehouseman* (a third party) in procuring, aiding or abetting the member who violates his contract. If the contract is one in furtherance of a legislatively declared purpose, then it was no doubt competent for the legislature to throw such restraints around it as were reasonably necessary to protect its integrity, and we do not think the imposition of the penalty, plus attorney's fees as a part of it, is in excess of the power or authority of the legislature in exercising its rights to preserve the integrity of the contract. Indeed, similar statutes to accomplish the same purpose by establishing a deterrent against others procuring a violation of acquired rights, and not to augment plaintiff's damages for their breach, have been upheld in many courts of the country, some of the cases being Atchison, Topeka, etc., Ry. Co. v. Matthews, 174 U. S. 96; Chicago, etc., Ry. Co. v. Feintuch, 191 Fed. 482; Cleveland, etc., Ry. Co. v. Hamilton, 200 Ill. 633; Fidelity Mutual Life Association v. Mettler, 185 Ky. 325, and many others which could be cited. Section

1814 of our present statutes, which has been the law for perhaps more than a century, provides that one keeping and operating a ferry shall forfeit as a penalty $25.00 for the first overcharge of prescribed ferry rates and $100.00 for each subsequent one, and such penalty may be recovered in a proceeding in the name of the one who paid the overcharge and for his use and benefit. Indeed, it is nothing uncommon to provide for such penalties and that they may be recovered for the benefit of the one against whom the violation was directed instead of by the Commonwealth in a prosecution by information or indictment, and since warehouses are proper subjects of classification (Nash v. Page, 80 Ky. 539; Pannell v. Louisville Warehouse Co., 113 Ky. 630; Jewell Tobacco Warehouse Co. v. Kemper (Ky.), decided January 20, 1925; the Potter case, *supra,* and many other cases from this and other courts) there can be no constitutional objection to penalizing them when they induce a member of the association to violate his contract in the manner set out in section 27 of the act and the penalty is not to compensate plaintiff for damages, but to punish defendant for doing the act prohibited by the statute. There is, therefore, no double remedy given to plaintiff for the violation of the contracts of its members. Neither is objection (e) above, applicable to the facts in this case, since it is competent for the legislature to fix the amount of the penalty in such cases, provided it is not unreasonable in amount. Likewise, objection (h) is of no avail, since defendant is not liable for the penalty or the attorney's fee unless it is guilty of a violation of the act. If the act attempted to penalize both parties for a violation of its terms it would then, perhaps, be required that they should be equally penalized, and such was true in the case relied on by defendant of Atchison, etc., Ry. Co. v. Vosburg, 238 U. S. 59, and others cited by counsel supporting the same proposition. We have no such case here. The section attacked in this case (27) does not provide for the preservation and integrity of any contractual relations entered into by the warehouseman (defendant) and plaintiff. The penalty imposed upon the warehouseman is directed solely against it to prevent it from destroying contractual relations existing between plaintiff and its members, and the principles announced in the cases relied on by defendant's counsel are wholly inapplicable.

Objection (d) to the constitutionality of the act as offensive to section 54 of the Constitution is clearly untenable, since there is nothing in the attacked provisions of section 27 attempting to limit the amount of plaintiff's recovery for any injury to its property. But if otherwise, defendant may not rely on that objection, because it would affect only the rights of plaintiff and not any of those of defendant. Owen County Burley Tobacco Society v. Brumback, 128 Ky. 137.

Neither do we attach any importance to the interstate commerce feature attempted to be injected into the case by counsel for defendant. In the first place, it is not shown that the tobacco of the member whose contract defendant is charged with assisting to violate, ever moved in interstate commerce, i. e., whether he produced it in another state and moved it to defendant's warehouse, or whether it was produced in this state and so moved. Again, it is extremely doubtful if it continued in interstate commerce after it had been removed from another state (if that was the fact) to defendant's warehouse. Section 27 of the act does not attempt to penalize any of the steps necessary for such removal, and when the tobacco was deposited in defendant's warehouse the latter would not be liable to the penalties of the act, unless it did something subsequent thereto to complete the violation of the member's contract with the association. Whatever, therefore, was thereafter done would be in relation to a localized commodity and would appear to not involve the question of interstate commerce. But beyond all that, we have seen that the Clayton Amendment to the Sherman Anti-Trust law excludes *such products* from the provisions of the latter act, and thereby Congress relinquished its superior right to regulate interstate commerce with reference to them and restored the right of the states to do so as long as that condition existed. It is, therefore, clear that the case is not one in violation of the Sherman Anti-Trust Act for which defendant could maintain its counterclaim, either for the actual amount of its alleged damages, or for treble that amount as attempted to be conferred by that act.

Finding nothing militating against plaintiff's right to maintain its cause of action herein, and nothing urged in legal defense thereof, it results that the judgment was proper, and it is affirmed.