## Hy-Grade Dairies v. Falls City Milk Producers Association et al.

(Decided Oct. 25, 1935.)

26

THOMAS C. FISHER, WILSON D. CRABB and ELLIOT L. MADDOX for appellant.

WOODWARD, HAMILTON & HOBSON for appellee Falls City Ass'n.

R. L. DUNCAN, H. W. FIENEMANN, ADOLPH MOSER, ED. D. TYLER, EDWARD P. HUMPHREY and MARVIN H. TAYLOR for appellee Ewing Von-Allmen Dairy Co.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant at the time and prior to the institution of this suit, was engaged in the business of selling milk in the city of Louisville. One appellee and cross-appellant, hereinafter called the Association was and is a co-operative association engaged in recieving milk from producers and distributing it to retailers. It was organized and is operating under the Co-operative Marketing Act (chapter 1, Acts 1922, section 883f-1 et seq., Ky. Stats. 1930).

It is admitted that the Association handles more than 90 per cent. of the the milk produced and distributed in the Louisville area. The general plan of co-operative marketing, as provided by the act mentioned, as well as its validity, has been upheld by this court in Liberty Warehouse Co. v. Burley Tobacco Growers' Co-operative Ass'n, 208 Ky. 643, 271 S. W. 695, Liberty Warehouse Co. v. Burley Tobacco Growers' Co-operative Marketing Ass'n, 276 U. S. 71, 48 S. Ct. 297, 72 L. Ed. 473, and the plan as applied to the marketing of milk in the manner here followed has been approved and explained in People v. Nebbia, 262 N. Y. 259, 186 N. E. 694, Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469, and Barns v. Dairymen's League Co-operative Ass'n, 220 App. Div. 624, 222 N. Y. S. 294.

The appellee Ewing-Von-Allmen Dairy Company, hereinafter called the Dairy Company, is one of the largest distributors in the area in question. Other appellees are individuals, members of the Association.

Appellant, claiming that he had been in the milk distributing business for a long time, and that he had built up a sizable business, which had at all times been operated in accordance with the ordinances of the city, relating to the sale of milk, filed suit against the appellees for damages to his business, and sought an injunction against them to prevent alleged interferences with the conduct of his business. He alleged specifically that appellees conspired to illegally fix the price of milk, that is the price paid to producers, and the prices to be paid to distributors, by requiring distributors (including plaintiff) to collect from producers a fixed sum and pay same over to the Association. He also alleges that the defendant Association has leases on many trucks of nonmembers engaged in hauling milk into Louisville; had conspired to and bought up milk routes

and used strong arm methods to require distributors and producers to ally themselves with the Association, and by meetings and high-powered salesmanship set up a situation whereby small distributors (including plaintiff) have been required to pay large sums into the "pool," the proceeds to be paid over to larger distributors, particularly the Dairy Company. The overt acts charged consisted of the alleged stopping of trucks hauling milk to plaintiff, diverting milk of nonmembers consigned to plaintiff and taking it to Association members. It also charged that members of the Association, on named days, "picketed" his place of business; that they came to his place of business and intimidated him; spread false reports as to his financial standing; and on the allegations briefly set out, he sought damages in the sum of $20,000 for injury to his business, and an injunction to restrain all the defendants from further activities in the particulars set out, and in general from doing any and all things which tended, or would tend, to molest him in his business operations.

Upon the filing of his petition, October 8, 1932, the circuit clerk granted a temporary restraining order, and set the hearing for a temporary injunction for October 11, 1932. At the time of the hearing an amended petition was filed, but it apparently only cured some technical defects in the original petition. There were demurrers and motions to strike from the petition but the court's rulings thereon are not seriously questioned, so they will be brushed aside, since it is apparent, from the voluminous pleadings filed, definite issues were raised.

The defendant Association, and several of the individually named defendants, and the Dairy Company, answered denying all allegations of the petition. At this point the plaintiff filed a second amended petition setting out facts which he claimed constituted a "boycott" of his business, but upon inspection it may be said that it contained very little by way of pleaded facts to add strength or force to his former pleadings. The amended pleadings were answered by way of denial, though the Dairy Company pleaded such alleged facts with regard to certain activities of the plaintiff as would constitute a bar, in their belief, because plaintiff did not come into court with clean hands.

After the second amended petition was filed the

Association and named members came in with an amended answer, counter-claim, and set-off; the affirmative defense being to some extent coordinate with the Dairy Company's answer, which latter sought no relief save the dismissal of the petition as to it.

The Association and members plead affirmatively and in much detail as to dates, places, and persons, charging that the plaintiff had on numerous occasions induced and attempted to induce members to violate their contracts with the Association by delivering their milk to him instead of the Association. In short, they plead specifically six charges, which they allege violated section 883f-26, Ky. Stats., section 26 of the act, supra, which section not only makes it a punishable misdemeanor to do the things therein prohibited, but gives the one injured civil redress to the maximum of $500 for each offensive act, and they ask a judgment in the amount of $3,000 and demand equitable relief by way of injunction against plaintiff. It may be mentioned also that the defendants plead their operations to have been in strict conformity to the Marketing Act.

Plaintiff's reply controverted the allegations of defendant's affirmative pleas, and he later filed a third amended petition in which he undertook to show that because he bought some milk from Indiana shippers or producers, the activities of defendants had in effect controlled the supply and prices of such milk, thereby violating the Interstate Commerce Act of Congress (49 USCA sec. 1 et seq.), but this pleading does not appear to be sufficient in substance, form, or effect to bring such question into the controversy.

The defendants at a later stage of the proceedings filed an amended answer and counterclaim, in and by which it asserted that prior to October 5, 1932, while acting as agents for producers and distributors, in conformity with the Marketing Act, the plaintiff had agreed to its uniform marketing plan, which required him to pay into the Association certain sums fixed by the equalizing contract, and that he was indebted to the Association in the sum of $734, on this account, because of his failure to adhere to the contract by meeting these payments, and it asked judgment for the sum named. This pleading was controverted by agreement.

The cause was submitted on motion for a preliminary injunction, at which time quite a mass of testimony was produced, and the court entered such orders

as restrained the Association and other defendants from doing all things which interfered with plaintiffs business, specifically from intercepting milk consigned to plaintiff, or diverting same in cases where the consignor was, or in good faith claimed to be, a nonmember of the Association, naming some six or seven particular persons and firms; also from soliciting any nonmember producers to become members of the Association, who at the time were known to be supplying milk to the plaintiff, and the plaintiff was restrained from attempting to procure, or procuring milk from known members of the Association. This order stood in effect from November 18, 1932, until December 12, 1932, when the case was finally submitted in chief, whereupon the court adjudged that the temporary injunction theretofore granted be dissolved, and that plaintiff's application for permanent injunction be denied, and his petition, in so far as it sought relief against the Dairy Company, be dismissed. Plaintiff was adjudged to recover of the Association and named members $500, with interest from November 25, 1933, and defendant Association to recover of plaintiff $734.20, with interest from October 5, 1932. Plaintiff appealed and the defendant Association has prayed a cross-appeal.

The determination of the questions presented to this court depend largely on a consideration of facts. It may be said at the outset that a reading of the proof demonstrates very clearly that the greater portion relates to the activities of the Association and its members which were clearly within the permissive provisions of the Marketing Act, and which taken alone do not constitute sufficient grounds to justify this court in saying that the lower court erred in not awarding to plaintiff a greater sum in damages than was awarded, or in granting injunctive relief. This comment applies to the things done by the Association in furtherance of its general plans and purposes, which seem to be permissive under the statute, and the plaintiff does not seriously challenge the legality of the Marketing Act; his main contention, as evidenced by his brief, being that he is entitled to greater damages for alleged destruction of his business, and for permanent injunctive relief, while defendants contend that they are entitled to heavier damages than such as were allowed, and injunctive relief.

A recital of the proof, and a resume of the plans

and purposes of the Association to any extent, would carry this opinion to a length hardly authorized or justified. As to the plans and purposes of co-operative milk marketing, if one be interested enough to do so, he may read the milk cases cited, supra, and an illuminating article on the scope of authority or power of associations engaged in the co-operative marketing of milk, appearing in the Kentucky Law Journal, No 2, January 1935, p. 215, entitled, "Cooperative Milk Marketing and Restraint of Trade."

As to facts, beyond those above mentioned, bearing on matters clearly within the scope of the Association's powers, it may be said that those which are outside the pale of the law's authorization consisted of overt acts of the Association members in taking milk from the trucks of the plaintiff on October 5, and perhaps another date. It so happened that along with the milk, which admittedly should have been delivered to the Association, was some milk of nonmembers which the plaintiff had the right to receive. The members very frankly admit the taking of all the milk, but disavowed knowledge that any of the milk taken was that of nonmembers. They quite as frankly admit "picketing" the plant of plaintiff, but avow that it was only for the purpose of preventing its members from violating their contracts by delivering Association milk to a nonmember. They admit that they had meetings at which the question of price fixing, price cutting, and the proper method of taking care of surplus milk were discussed—sometimes rather heatedly.

The plaintiff also admits that he, at the times mentioned, did procure membership milk, and in order to receive it he sent his trucks into the country to pick it up from trucks on the highways. As to his claim that his business was injured by false reports of his financial standing, the most that can be said of such was that there was perhaps a threat that such would be done.

With the mass of proof before the lower court, the judgment above adverted to was entered, and the chancellor in directing the judgment incorporated into the record a memorandum opinion, which seems to us to have exemplified a very fair balancing of the scales of justice; a fair and equitable solution of the questions presented here for review, to such an extent that we

shall take the liberty of incorporating the opinion in part as fully reflecting the views of this court. It follows:

"The plaintiff's right to recover damages can be easily disposed of. The burden of his complaint is that the activities of the defendants tortuously prevented his getting sufficient milk to serve his customers to the consequent damage of his business. Conceding that there were periods during which plaintiff could not procure enough milk to meet his needs because of the actions of the Association it by no means follows that there can be a substantial recovery. The gist of his action is his failure to get milk. Prior to their inception of the alleged torts of the Association he was buying his milk from producers who were members of the Association and from some who were not members. The Association was free at any time to refuse to sell the milk of its members and free to refuse to let its members sell their milk to him direct. On October 1, 1932 the Association cut off the milk which was coming to plaintiff from its members, and in addition wrongfully diverted certain milk consigned to him by nonmembers. Thereafter he did not get sufficient milk to meet his needs until the effect of the temporary injunction permitted him to do so. Thus there is a wrongful act, the interception of nonmember milk and a definite shortage of milk thereafter to meet his needs. But it is axiomatic that the wrongful act must have caused the damage. It follows, therefore, that plaintiff must show that but for the wrongful act of the Association in diverting the nonmember milk, he would have procured sufficient milk to meet his needs. To do so he must show that there was nonmember milk which he could have secured, if the Association had not acted as it did on October 4, 1935, for the Association properly could and did subtract the member milk from his supply. More specifically, he must show that there were nonmembers who would have sold him milk, but for fear that their milk, too, would be intercepted, or fear that their aiding him would incur the enmity of the Association. He attempts to do so but without much success. It is clear that the major portion of his milk shortage was caused by the legitimate and proper act of

the Association in refusing to let its member milk go to one who was openly hostile. It is equally as clear that the action of the Association in intercepting plaintiff's nonmember milk in early October of 1932 caused him some damage. He lost the anticipated profits of the intercepted milk and his good will was injured. Fair compensation for that injury, however, is in my opinion no more than $500. And judgment will be given for that sum against the Association and the individual defendants.

"As to the period prior to October 4, 1932, there is no substantial proof that the activities of the Association prevented him from getting sufficient milk during that time.

"The portion of the prayer which asks an injunction against 'interfering with plaintiff's business' is, of course, limited and qualified by the enumeration of the various specific methods of interfering set out therein. He is asserting interferences which, if committed, would be wrongful, and he is correct in the assertion that such interferences are wrongful. A co-operative association cannot commit a tort even where its object in so doing is to attain the purpose for which it was legitimately formed, namely, the procurement of the highest possible price for the products of its members. It cannot be contended that a co-operative can by its activities close up or interfere with private business inimical to and standing in the way of accomplishment of its purposes and justify its acts by asserting that the end justifies the means and that a legitimate end legitimatizes acts which are inherently wrong. It seems obvious that co-operatives must attain their goal by economic pressure legitimately applied, and without resorting to practices and acts which, if committed by a less favored corporation or by private individuals, would not be countenanced by a court of equity. Barns v. Dairymen's League Co-operative Ass'n, supra.

"But those injured by a co-operative's overstepping the above-mentioned bounds are themselves equally bound by and subservient to the general equitable principles regulating the granting of injunctions.

"*** It follows, I think, that no broad injunction should be granted here unless there is a clear and urgent need for protecting the plaintiff. The Association can be enjoined from doing certain specific and exactly definable acts which would interfere with plaintiff's procuring nonmember milk, and plaintiff is entitled to such provided there is danger that such acts of the Association in the past will be repeated. The plaintiff asserts that they will be repeated. The Association repeatedly say that they will not. Of the two positions, I think that of the Association is more probably correct. For that reason I feel that it is proper to deny the injunction and to refuse to continue the temporary injunction in force.

"The plaintiff, however, can be taken as seeking to enjoin the continuation of an alleged conspiracy between the Association, its named officers and the Ewing-Von-Allmen Dairy Company to injure him. That portion of his prayer can be easily disposed of. There is in my opinion no substantial evidence of the existence of such a conspiracy. *** There is a legitimate explanation for every statement or act charged by the plaintiff as symptomatic of the existence of a conspiracy.

"The prayer for a permanent injunction will be denied and the temporary injunction heretofore granted will be vacated.

"'As to counterclaim: It is obvious that the causes of action asserted by it are such as should not properly be asserted in this action by way of counterclaim. In one the Assocation seeks to recover under a contract between it and plaintiff which, of course, has no connection with and does not arise out of the cause of action asserted by him. In the other the Association seeks to recover statutory penalties imposed on those who induce members of a co-operative to breach their marketing contracts with it. That cause of action is equally unconnected with that asserted in the petition." The court then upon consideration of the evidence held the proof with relation to the counterclaim, that is the statutory penalties, insufficient and dismissed it. However, he considered the proof on the second counterclaim ample and allowed it.

"The proof advanced to support the recovery of the statutory penalties does not satisfy me that plaintiff's acts sufficiently come within the offense prescribed by the statute. That portion of the counterclaim is dismissed.

"The amended counterclaim seeking the recovery of $734.20 as the balance due from plaintiff on October 5, 1932, under the general marketing agreement is proven, and judgment will go for that amount."

After a careful survey of the entire record herein, and a consideration of the facts developed in proof, we find nothing which would justify us in disturbing the judgment of the court below.

Judgment affirmed on original and cross appeal.